IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF PUERTO RICO


IN THE MATTER OF                        :

JORGE ORTIZ ROMANY & JG-24,      :      CASE NO. 04-03074(SEK)
INC.,
      DEBTOR                     :      CHAPTER 7

- - - - - - - - - - - - - - - - - - - -

**FILED & ENTERED**

- 4 MAY 2006

CLERK
U.S. BANKRUPTCY COURT
SAN JUAN, PUERTO RICO

**OPINION AND ORDER**

Debtor seeks a dismissal of this case pursuant to 11 U.S.C. §

707(a).  The US Environmental Protection Agency ("EPA"), the U.S.

Trustee and the Chapter 7 Trustee all oppose Debtor's request.  We

deny Debtor's motion for reasons that follow.

*Background*

We borrow EPA's narration as it portrays an accurate picture of

events and facts which serve as a backdrop to Debtor's request.

> On March 22, 2004, Debtor, Jorge Ortiz Romany (the
> "Debtor"), filed a petition for relief under Chapter 11 of
> the United States Bankruptcy Code, 11 U.S.C. (dkt #1)[2] On
> the same date, notwithstanding the police and regulatory
> exception of 11 U.S.C. §362(b)(4), the Debtor filed a motion
> for stay of a case pending in the United States District
> Court for the District of Puerto Rico against the Debtor and
> several other defendants captioned *United States of America
> v. JG-24, Inc. et al.*, Civil No. 00-1483(RLA) ("*United
> States v. JG-24*").  The stay was denied pursuant to 11
> U.S.C. §362(b)(4), and the case was tried on March 24 and
> April 7, 2004. On August 18, 2004, final judgment was
> entered against Debtor in the *United States v. JG-24*, in the
> amount of $4,264,852.77. ...
>
> On April 20, 2004, the Debtor filed a Motion for
> Voluntary Dismissal Without Prejudice of his Chapter 11

---

[2]  At the same time, on of his companies, JG-24, Inc. also flied
a petition for relief under the Bankruptcy Code.  That petition was
filed under Chapter 7, was captioned *In re JG-24, Inc.*, Case No. 04-
03075(SEK)(Bankr. D.P.R.), and has been substantively consolidated
with this action.

2

petition (dkt #11). The United States, on behalf of EPA, filed an objection to Debtor's Motion for Voluntary Dismissal Without Prejudice (dkt #15). On June 10, 2004, the Debtor withdrew his Motion for Voluntary Dismissal Without Prejudice in open court (dkt # 21).

In his Chapter 11 voluntary petition, the Debtor stated that he estimated his assets of between $1,000,001 and $10 million (dkt #1). The Debtor filed his first set of bankruptcy schedules and statement of affairs on July 30, 2004, the date of the initial 341 creditor's meeting in the Chapter 11 proceeding (dkt #34). In it, Debtor stated that he had assets valued at $1,302,500. However, the schedule and statement of financial affairs filed on July 30, 2004 were incomplete and inaccurate, and the Debtor was directed to submit amended schedules and an amended statement of financial affairs and appear for a follow-up 341 creditors' meeting (dkt #35). On October 18, 2004, the Debtor appeared for a followup 341 creditors' meeting and filed amended schedules and an amended statement of financial affairs. In his October 18, 2004 bankruptcy schedules, the Debtor stated that he had assets valued at $20,687,500 (dkt #49). While some of these "assets" may be questionable, he does have a 33% share in an inheritance which includes the 008 CEROM Diversified Corporation ("CEROM"), with an estimated value of several million dollars (dkt #49-Schedule B Item 19 and note attached to Schedule B relating to Item 19).

Several creditors have filed proof of claim in the Debtor's bankruptcy proceeding, including the United States on behalf of EPA, the Puerto Rico Department of Treasury, the Puerto Rico Department of Labor, the Internal Revenue Service, Benedicto Vidot (a former employee of the Debtor), Benjamin Ortiz Belaval (a former attorney of the Debtor), Servicios Científicos y Técnicos (a former consultant of the Debtor), José Cintrón (a former attorney of the Debtor), and the Office of the United States Trustee. See Claims Registry #s 1-12. The Debtor also listed four uncontested creditors in the List of Creditors included with his petition papers, Carlos Capre, Monserrate Santiago, Environmental Quality Lab, and I. Cortés-Pintor &Associates (dkt #1).



After some initial discovery, on February 25, 2005, the United States on behalf of EPA, filed a motion to convert the Debtor's bankruptcy proceeding to Chapter 7, submitting evidence therewith that the Debtor had filed bankruptcy schedules under oath which he failed to disclose significant assets that belong to the bankruptcy estate (dkt #85). On March 16, 2005, the United States on behalf of EPA filed a supplemental brief, submitting newly acquired evidence that the Debtor has a brokerage account that he failed to disclose in his bankruptcy schedules and at his 341

3

meetings, from which he had transferred, post-petition, approximately $1.6 million, without notice to creditors and authorization from the Court (dkt # 95). On March 17, 2005, the United States Trustee filed an urgent motion to convert the Debtor's bankruptcy proceeding to Chapter 7 (dkt # 94). The Court granted the United States Trustee's urgent motion to convert on March 18, 2005 (dkt #96), and a Chapter 7 Trustee, Wilfredo Segarra Miranda, was appointed on that date (dkt #100).

Since the time of his appointment, the Chapter 7 Trustee has filed three adversary proceedings herein ... . Through two of those adversary proceedings, he has been able to recover approximately $1 million of the $1.6 million transferred by the Debtor out of the undisclosed brokerage account during the pendency of the bankruptcy proceeding. ... Through the third adversary proceeding, the Chapter 7 Trustee is seeking to establish that a property located at PR Road 165, Km. 2.5, Cataño, P.R. 00963 (the "Cataño" property) is an asset of the estate, so that it may be liquidated for the benefit of the estate and creditors. In this adversary proceeding, the Chapter 7 Trustee has been authorized to record a cautionary notice on this property to assist in assuring that the property remains available to be liquidated for the benefits of the estate and creditors in the event he prevails in the adversary proceeding. ...

On information and belief, the Chapter 7 Trustee has also notified officer(s) of CEROM, a valuable asset of the bankruptcy estate, that the bankruptcy estate has one-third ownership interest in CEROM. In addition, through discovery independent of efforts to obtain information from the Debtor, the United States and the Chapter 7 Trustee have obtained copies of notarized deeds of prepetition purchases by the Debtor of at least 24 real properties that the Debtor did not disclose in his bankruptcy schedules, some or all of the properties could be liquidated by the Chapter 7 Trustee for the benefit of the estate and creditors. [footnote #3 omitted]

On August 10, 2005 and August 12, 2005, the 341 meeting of creditors in the Debtor's converted Chapter 7 bankruptcy proceeding was held, following the apprehension of the Debtor after his failure to appear at previously scheduled 341 creditors meetings in the Chapter 7y proceeding. In the 341 meeting held on these dates, the Debtor exercise his constitutional rights by taking the Fifth Amendment privilege against self incrimination on practically all questions asked of him relating to assets and other financial matters. ...[T]he United States Trustee accepted answers invoking the Fifth Amendment as responsive and certified that the meeting of creditors was completed on

4

August 12, 2005. Since that time, no party in interest has sought to take further testimony from the Debtor.

During the 341 creditors meeting on August 10, 2005 and August 12, 2005, the FBI agents who brought the Debtor to the conference room at the United States Trustee's office where the 341 meeting was being held were not present in the conference room, and most of the time the conference room door was closed. Contrary to the Debtor's insinuation in the Debtor's Ch. 7 Dismissal Motion ... the FBI agents were not at the United States Trustee's office to listen in, and in fact did not listen in, on the meeting. They were present at the United States Trustee' office ... solely to assure that the Debtor did not abscond until the 341 meeting was completed.

The Debtor filed a notice of appeal of the final judgment in the *United States v. JG-24*, ...on October 18, 2004. At this Court's direction (dkt #190), the Chapter 7 Trustee intervened in this appeal ... on behalf of the estate. After authorization by this Court, the Chapter 7 Trustee has hired Attorney José Cepeda Rodríguez as special counsel to investigate the merits of the appeal and represent the estate in the appeal (dkt #s 249, 251). Attorney Cepeda Rodríguez filed his appearance for Debtor Jorge Ortiz Romany in this appeal in the First Circuit on September 29, 2005, and, on the same date, Attorney Cepeda requested an extension of time to file the brief and appendix on behalf of the debtor.

...

In addition to the three adversaries brought by the Chapter 7 Trustee, the United States on behalf of EPA and the United States Trustee has filed an adversary complaint objecting to the discharge of the Debtor ... . In this adversary complaint, the United States has not sought to deny the discharge under 11 U.S.C. § 727(a)(6), which provides for denial of discharge after refusal to respond to questions in the event of a grant of immunity from prosecution. ... Rather, the United States' adversary seeks denial of discharge under 11 U.S.C. § 727(a)(2), (a)(3), (a)(4)(A) &(D), and/or (a)(5) ... .

The parties agreed an evidentiary hearing was unnecessary, but after notice and hearing, argued the motion before us last week. After the motion was briefed, the Chapter 7 Trustee filed three more adversary complaints for declaratory judgments concerning the 24 real

5

properties mentioned above. We also note that I referred this case to the U.S. Attorney's office due to the possible commission of bankruptcy crimes, and there is an ongoing criminal investigation. As far as we know, there has been no submission to a grand jury and no indictment.

### DISCUSSION

11 U.S.C. 707(a) provides that a case under Chapter 7 may be dismissed for "cause",[3] which the Code does not define. The burden of showing there is "cause" for dismissal rests on the moving party, in this case, the Debtor. In re Harker, 181 B.R. 326, 328 ( Bankr. E.D. Tenn. 1995); In re Fekos, 148 B.R. 10, 11 (Bankr. W.D. Pa. 1992). The Court's "task is to measure the prejudice to the Debtor triggered from the denial of the Motion against the prejudice to creditors if the case is dismissed." In re Williams, 305 B.R. 618, 620 (Bankr. Conn. 2004); In re Padilla, 222 F. 3d 1184, 1190-1191 (9th Cir. 2000); In re Klein, 39 B.R. 530, 532-533 (Bankr. E.D.N.Y. 1984), In re Banks, 35 B.R. 59, 60-61 (Bankr. Md. 1983).

Here, Debtor claims there are six "causes" for dismissing this case. Great emphasis is placed on the first cause for dismissal, which we disregard as irrelevant to the situation at hand. Debtor states that he cannot be compelled to testify in any further bankruptcy proceeding as he was advised of his Miranda rights, and invoked his Fifth Amendment right to self incrimination which adversely affects the administration of the estate. We agree with EPA's contention, that a series of cases cited by Debtor in support of



---

[3]  6 Collier On Bankruptcy, ¶ 707.03. (15th ed. rev.).

6

this view are not applicable, as the motion for dismissal was filed by creditors and not by the debtors.  Furthermore, the Chapter 7 Trustee closed the 341 meeting of creditors, accepted Debtor's invocation of his 5th Amendment right, and states he can administer the estate and prosecute the complaint for denial of discharge based on fraud without Debtor's aid.  Hence, we are not faced with the dilemma of requiring Debtor's testimony after the invocation of the privilege through a grant of immunity, nor are we called upon to draw inferences derived from the invocation of the self incrimination right in response to an inquiry.  While Debtor claims exposure to the dilemma in the near future is inevitable due to the pending adversary complaints, (specifically, the one dealing with the denial of his discharge), we find this argument is premature in light of the Chapter 7 Trustee's position, and given the fact that Debtor has not raised the privilege in the adversary proceedings.  Furthermore, the recent case of <u>Marrama v. Citizens Bank of Massachusetts, (In re Marrama)</u>, No. 05-1858 slip Op. (1st Cir. April 20, 2006), shows dismissal is not a required solution when a debtor invokes the Fifth Amendment in a complaint objecting to his discharge due to fraud.

Next, Debtor argues this case should be dismissed on account of an ongoing parallel, civil and criminal procedures.[4]  Apparently, Debtor fears the administration of the estate might force him to provide information needed to prosecute the civil case on appeal and



---

[4]  There is no objection to parallel civil and criminal proceedings, absent special circumstances. <u>Securities and Exchange Commission v. Dresser Industries</u>, 628 F. 2d 1368, 1374-1375 (D.C. Cir. 1980).

7

further the criminal investigation. Cases cited by Debtor do not support his argument. Furthermore, this reason for dismissal cannot prosper given the Trustee's position that he will honor Debtor's invocation of the Fifth Amendment, and can administer the estate without Debtor's aid and has abandoned the appealed case.

Allegations of FBI impropriety during the 341 meeting of creditors are ludicrous. These meetings are public, and Debtor admits he did not answer questions that might incriminate him. Hence, even if the FBI agents were eavesdropping, they were unable to obtain any information.

Debtor points to unnecessary estate expenditure caused by its intervention in the appeal of Judge Acosta's opinion in the case of *United States v. JG-24* as cause for dismissal. However, this assumed cause for the dismissal under Code section 707(a) is moot, because the Trustee abandoned this asset on advice of his Special Counsel (dkt #285). Debtor did not challenge the abandonment. Hence, costs of this litigation are no longer a factor in the administration of this estate.

Debtor mistakenly states that only one creditor, EPA, opposes his request for a voluntary dismissal. The record shows the U.S. Trustee and the Chapter 7 Trustee also oppose the dismissal. Court's have held that opposition by one or none of the creditors or parties in interest is irrelevant to the Court's task of balancing the interest of the Debtor and the creditors when faced with a §707(a) request for dismissal. <u>Banks</u>, 35 B.R. at 60.



Assuming Debtor's argument that creditors can obtain relief

8

through state court procedures equal to the relief afforded by this Court is true, the fact remains that Debtor voluntarily exercised his privilege of seeking bankruptcy protection, and now seeks to rid himself of the consequences of his possible misconduct in bankruptcy by raising this spurious cause for dismissal. A dismissal at this point, would only promote the race to the courthouse, depriving creditors of an orderly distribution of estate assets and depriving the Debtor of his fresh start, even though here his right to a discharge is being challenged.

Lastly, Debtor claims the totality of the circumstances of this case, including reasons for converting the case to Chapter 7, issuance and enforcement of the order of apprehension until the 341 creditors meeting was concluded, the Court's referral of the matter to the U.S. Attorney due to possible bankruptcy crimes, and the ongoing criminal investigation, are implied findings that Debtor has engaged in bankruptcy crimes and, therefore, should be cause for the dismissal of this case. We hold these same circumstances show the Debtor, while he was a Debtor in possession, was not honoring his duties set forth by the Code.[5] These require complete disclosure of assets. The disclosure is required as part of a noncriminal statutory scheme for the administration of bankruptcy cases. The scheme is aimed at disclosure for purposes of distributing the bankruptcy estate in an orderly fashion to creditors, and affording the debtor a fresh start. It is not aimed at ferreting prospective criminal defendants. When

---

[5] See 11 U.S.C. § 1107(a) and 11 U.S.C. § 704(a); In re Fairbanks, 135 B.R. 717, 723 (Bankr. N.H. 1991).

9

the totality of the circumstances show the aim of the scheme is not being met, then these same circumstances are grounds for conversion of the case to Chapter 7. 11 U.S.C. § 1112(b). We do not know if these circumstances are also grounds for prosecution for commission of bankruptcy crimes. But we are commanded to refer the matter to the U.S. Attorney who then makes this decision. Therefore, the totality of the circumstances of this case cannot be cause for the dismissal sought by the Debtor. To accede to his request is tantamount to a court approval of his noncompliance with clear duties set by law.

We now apply the balance of interests test to the circumstances of this case. "Generally, if creditors are prejudiced in any respect by the dismissal or if the trustee has acquired funds for distribution, the request by the debtor for the dismissal should be denied. Otherwise, the court could invite possible abuse of the bankruptcy system by debtors." Banks, 35 B.R. at 59. The Trustee here has already recovered at least one million dollars, is in the process of obtaining title to 25 parcels of land, all of which can be administered for purposes of distribution to creditors. "A dismissal would have the effect of returning said creditors to status quo ante and would relegate them to proceeding anew in the enforcement of their claims." Kline 39 B.R. at 532. The Debtor has exercised his right to silence under the 5th Amendment. This right is recognized and respected by the Trustee, who assures the Court that the estate administration may proceed without impinging upon Debtor's privilege. It is our conclusion therefore, that creditors would be prejudiced by the dismissal of this case, and only the Debtor would benefit from

such action.

WHEREFORE, Debtor's motion for a voluntary dismissal pursuant to 11 U.S.C. § 707(a) is denied. Separate judgment shall be entered accordingly.

SO ORDERED, in San Juan, Puerto Rico, on May 3, 2006.

SARA DE JESUS
U.S. Bankruptcy Judge